# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| **DOWNHOLE TECHNOLOGY LLC,** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 4:17-cv-00020** |
| | § | |
| **SILVER CREEK SERVICES INC.,** | § | **Jury Trial Demanded** |
| | § | |
| **STORMFIELD INNOVATIVE** | § | **ORIGINAL COMPLAINT** |
| **TECHNOLOGIES, LLC,** | § | |
| | § | |
| **DANIEL R. COFFEE,** | § | |
| an individual, | § | |
| | § | |
| **MICHAEL DIDIER,** | § | |
| an individual, | § | |
| | § | |
| **DILLON W. KUEHL,** | § | |
| an individual, and | § | |
| | § | |
| **CHARLES M. WILLIAMS,** | § | |
| an individual, | § | |
| | § | |
| *Defendants.* | § | |

Plaintiff Downhole Technology LLC ("Downhole"), by and through its undersigned counsel, brings this action for patent infringement, misappropriation of trade secrets, and related causes of action against Silver Creek Services Inc., StormField Innovative Technologies, LLC, Daniel R. Coffee, Michael Didier, Dillon W. Kuehl, and Charles M. Williams (collectively, "Defendants"), and alleges as follows:

1.    As will be detailed below, and further developed through the evidence adduced during this litigation, the individual Defendants gained access to Downhole's trade secrets,

know-how, and confidential business information through their professional roles performing services for Rice Energy in the Marcellus Shale, and through their personal relationships with each other.  Contrary to their legal obligations, and in furtherance of their own business interests and the business interests of their business entities, Silver Creek and StormField, the individual Defendants misappropriated Downhole's valuable information and allowed Silver Creek and StormField to use the information to compete unfairly against Downhole.  This unfair competition included copying Downhole's innovative, patent-protected BOSS HOG® plug, and using Downhole's confidential know-how and operating knowledge to deploy their copycat plugs, and claim they could serve Rice Energy without Downhole.  Defendants further harmed Downhole's business reputation by making false statements about the quality of Downhole's products.  This harm to Downhole's reputation caused Downhole to lose not only the Rice Energy business, but other business in the Marcellus Shale.  These and other acts of Defendants have harmed Downhole's business both in the form of sales of products and services lost directly to the Defendants, and business opportunities Downhole did not have the opportunity to compete for because of the harm to Downhole's reputation the Defendants caused by their false statements.

## PARTIES

2.      Downhole is a Texas limited liability company with principal place of business at 7123 Breen Drive, Houston, Texas 77086.  Downhole was formerly known as National Boss Hog Energy Services LLC and changed its name to Downhole Technology LLC in September 2013.

3.      Silver Creek Services Inc. ("Silver Creek") is a Texas corporation with principal place of business at 4 Grandview Circle, Suite 201, Canonsburg, PA 15317.  Silver Creek may

be served with process through its registered agent, Michael Didier, located at 4 Grandview Circle, Suite 201, Canonsburg, PA 15317 or 1013 Breezewood Dr., Canonsburg, PA 15317, and among other places as the law allows.

4.     StormField Innovative Technologies, LLC ("StormField") is a Texas limited liability company with, on information and belief, a principal place of business at 141 Industrial Drive, Suite 201, Boerne, Texas 78006.  StormField may be served with process through its registered agent, Chad A. Elms, located at 19307 Terra Mont, San Antonio, Texas 78255, and among other places as the law allows.

5.     Daniel R. Coffee ("Coffee") is an individual.  Coffee is the Chief Operating Officer and President of Silver Creek.  Before joining Silver Creek, Coffee was Vice President of Wireline Operations for FTS International Services, LLC.  Coffee may be served with process at 4645 Mel Lane, Wooster, Ohio 44691, and among other places as the law allows.

6.     Michael Didier ("Didier") is an individual.  Didier is a Director of Silver Creek and, on information and belief, a resident of Texas.  Didier may be served with process at 1013 Breezewood Dr., Canonsburg, PA 15317, and among other places as the law allows.

7.     Dillon W. Kuehl ("Kuehl") is an individual.  On information and belief, Kuehl is a resident of Texas, a former Senior Vice President of Silver Creek, a managing member of StormField, and the current President of Bio Stacked Enviromental, Inc.  Kuehl may be served with process at 1451 W US 380 Business Suite 2B, Box 2, Decatur, Texas 76234, or at 171 Overland Trial, Willow Park, TX 76087, and among other places as the law allows.

8.     Charles M. Williams ("Williams") is an individual.  On information and belief, Williams is a resident of Pennsylvania and is currently the Chief Executive Officer of Silver Creek, and a managing member of StormField.  Williams may be served with process at 10166

Tims Road, Marietta, Oklahoma 73448-8607, or 941 Red Bird Lane, Weatherford, Texas 76088, and among other places as the law allows.

## NATURE OF THE ACTION

A. Background – Hydraulic Fracturing and Frac Plugs

9.       Founded in 2010, Downhole is a company based in Houston, Texas that designs, manufactures, and deploys frac plugs used in the hydraulic fracturing ("fracking") industry.  Frac plugs are used in the fracking industry to facilitate extraction of hydrocarbons from a well.

10.       An oil or gas well includes a wellbore that extends into a subterranean formation at depth below a surface (such as the earth's surface), and is usually lined with a casing, referred to as a "tubular," to add strength to the well and prevent the well from collapsing on itself.

11.       Some commercially viable hydrocarbon sources are found in "tight" reservoirs, meaning that the target hydrocarbon product may not be easily extracted.  The surrounding formation (*e.g.*, shale) to these reservoirs typically has low permeability, and it is uneconomical to extract the hydrocarbons (*i.e.*, gas, oil, etc.) in commercial quantities from this formation without the use of drilling accompanied with fracking operations.

12.       Fracking is common in the oil and gas industry and may include use of a frac plug set in the wellbore below or beyond the respective target zone, followed by pumping or injecting high pressure frac fluid into the zone. The frac operation results in fractures or "cracks" in the formation that allow hydrocarbons to be more readily extracted and produced by an operator, and may be repeated as desired or necessary until all target zones are fractured.

13.       A frac plug serves to isolate the target zone of a wellbore during a frac operation. Typically constructed of durable metals, frac plugs include a sealing element of compressible material that can be expanded radially outward to engage the tubular and seal off a portion of the

4

wellbore to allow an operator to control the passage or flow of fluids.  For example, by forming a pressure seal in the wellbore and/or with the tubular, the frac plug allows pressurized fluids or solids to treat the target zone or isolated portion of the formation.

B. Downhole's Frac Plug Technology

14.     Committed to the highest quality product, Downhole performs all frac plug manufacturing at its climate-controlled plant in Houston, Texas, and markets and sells its industry-leading frac plugs under the BOSS HOG® name:



15.     Downhole's BOSS HOG® frac plugs include composite material to avoid breakage and presets, and feature carbide-free and ceramic-free steel buttons that hold firm to prevent casing damage and are easily drilled out.

16.     Downhole's customers have used more than 35,000 of the company's frac plugs in hydrocarbon wells throughout North America.  Due to the unique features of the BOSS HOG® frac plugs, customers can run those plugs down wells at higher speeds than the competition's plugs, drill out those BOSS HOG® frac plugs in less time than the competition's plugs, and also use significantly less water volume during pumpdown, all of which can result in savings of up to several hundred thousand dollars per well.

C.     The Relationship Between Downhole and Defendants Kuehl, Didier, Williams, and Coffee

17.     Kuehl was an employee of Downhole beginning on or about March 18, 2013 and ending on or about March 31, 2014.  During his employment with Downhole, Kuehl's title was Field Service Technician.

18.     Just prior to beginning his employment with Downhole, on March 7, 2013, Kuehl signed a Proprietary Information and Intellectual Property Assignment Agreement (Exhibit A, the "Kuehl NDA").  The Kuehl NDA provides, *inter alia*, that Kuehl

> agree[s] at all times during the term of the Relationship and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization . . . any Proprietary Information of the Company that I obtain or create. . . . I further agree not to make copies of such Proprietary Information except as authorized by the Company.  I understand that "Proprietary Information" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, service providers, licensees, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with

6

> whom I became acquainted during the Relationship}, prices and costs, markets, software, developments, inventions, processes, technology, designs, drawings, engineering, hardware configuration, marketing, licenses, finances, budgets or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment or created by me during the period of the Relationship, whether or not during working hours.

(Kuehl NDA, § 2).

19.     During his employment with Downhole, and around October 2013 through about December 2013, Kuehl oversaw installation (or, "running") the Downhole frac plugs for two customers, FTS International Services, LLC ("FTSI") and Rice Energy, at a site for those customers in the Marcellus Shale region of the United States (the "FTSI/Rice Site").

20.     Prior to beginning work at the FTSI/Rice Site, FTSI and Downhole signed a Master Purchase Agreement for Products and/or Services (Exhibit B, the "FTSI Agreement"). The FTSI Agreement includes a Confidentiality provision which states:

> Nondisclosure. To the fullest extent permitted by Applicable Law, each Party (i) shall treat all non-public information, regardless of form or format, obtained from or supplied by the other Party in connection with this Agreement, the Products and/or the Services as confidential and proprietary information ("Confidential Information") of the disclosing Party; (ii) shall not convey, transmit, disclose, and/or otherwise provide the Confidential Information to third parties (nor make any public announcement or publicity releases concerning or containing the Confidential Information); and (iii) shall not use the Confidential Information in any manner, except in connection herewith. The Confidential Information may be disclosed by the receiving Party to its employees, agents, representatives, consultants, and contractors to the extent necessary for this Agreement, the Products, and/or the Services, provided that any such disclosure shall not be made without first obtaining any such person's written acknowledgement and agreement to be bound by an obligation of confidence and non-disclosure at least as strict as that set forth in this section, and the receiving Party shall remain primarily liable for any unauthorized disclosure by any such person.

(FTSI Agreement, ¶ 12).

21.     On information and belief, Kuehl and Didier were personal friends before Kuehl began overseeing installation of the Downhole frac plugs for FTSI and Rice Energy at the FTSI/Rice Site.  Also on information and belief, Didier was a consultant for Rice Energy at the time Kuehl oversaw installation of Downhole's frac plugs at the FTSI/Rice Site.

22.     On information and belief, Williams was an Operations Manager for FTSI during the time that Kuehl oversaw installation of Downhole's frac plugs at the FTSI/Rice Site. Williams was bound by the FTSI Agreement.

23.     On information and belief, Williams and Didier learned detailed information about the Downhole frac plugs through Kuehl at the FTSI/Rice Site.

24.     On information and belief, on or about October 2013, Coffee was Vice President of Wireline Operations for FTSI.  Coffee learned detailed information about the Downhole frac plugs from his involvement at the FTSI/Rice Site, and/or through Didier, Kuehl, and/or Williams.

25.     On or about December 19, 2013, Coffee, Didier, Kuehl, and Williams formed Silver Creek.  Each served as a Director or Officer of Silver Creek.  At the time Silver Creek was formed, Kuehl was still employed by Downhole, and he remained an employee of Downhole until March 31, 2014.  On or about September 4, 2014, Kuehl and Williams, along with other individuals, formed StormField.  Kuehl and Williams were named as Managing Members of this Limited Liability Company.

C. <u>Defendant Silver Creek and StormField</u>

26.     On or about October 2014, Downhole became aware that Defendant Silver Creek was selling frac plugs nearly identical to the Downhole frac plug.  On information and belief, the

Silver Creek plug includes a composite mandrel with upper shear threads and a set of lower threads.  According to its website, Silver Creek markets its frac plug as "ZIP Plugs":



**Frac Plugs:**

• State of the art composite 10k or 15k Ball Drop Frac Plugs and Bridge / Kill Plugs

• Brand name is ZIP Plugs (Zone Isolating Plugs)

(http://scsfirst.com/services/#fracplugs).

27.     On information and belief, StormField manufactured the ZIP Plugs offered by Silver Creek.  According to a press release dated July 9, 2015 on the StormField website, StormField "partners with" Silver Creek, and Silver Creek serves "as distributor of [StormField's] ground-breaking ZIP plugs in both the Marcellus & Utica shale plays." (Exhibit C).  Although they copied the physical features covered by the Patents, that effort did not replicate all of the BOSS HOG® performance.  When the Defendants' plug did not perform well, they falsely informed Rice and other customers or potential witnesses that the failing plugs were the Downhole BOSS HOG® plug.   These false representations have harmed Downhole's existing and potential contractual relationships.

28.     None of the Defendants could have designed, developed, marketed, or sold the ZIP plug without improperly misappropriating and utilizing confidential and trade secret information belonging to Downhole.  Downhole's many years dedicated to development of its BOSS HOG® frac plug technology is confirmed by the issuance of the patents-in-suit, as set forth below.

## JURISDICTION AND VENUE

29.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*., including 35 U.S.C. § 271.  This Court has original and exclusive subject matter jurisdiction over the patent infringement and unfair competition claims for relief under 28 U.S.C. §§ 1331, 1338(a), 1338(b).

30.    Downhole also asserts related causes of action, which are so related to claims of patent infringement and unfair competition over which this Court has such original jurisdiction that all claims form part of the same case or controversy, and over which the Court has supplemental jurisdiction under 28 U.S.C. § 1367.

31.    Venue is proper in this Court under 28 U.S.C. § 1391 as well as 28 U.S.C. § 1400(b).  Per an agreement between the parties, Defendants do not dispute that venue is proper in this Court.

32.    Personal jurisdiction exists over the Defendants because, per an agreement between the parties, Defendants do not dispute the jurisdiction of this Court.

33.    Joinder of Silver Creek and StormField for patent infringement in this action is proper under 35 U.S.C. § 299 because, among other reasons, Downhole asserts a right to relief against Silver Creek and StormField with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, offering for sale, or selling of common accused products, including "ZIP Plugs," and questions of fact common to Silver Creek and StormField that will arise in this action.

## THE PATENTS-IN-SUIT

34.    Downhole is the owner of the entire right, title, and interest in and to U.S. Patent No. 8,955,605 (the "'605 Patent"), entitled "Downhole Tool and Method of Use," which was

duly issued by the United States Patent and Trademark Office on February 17, 2015.  A copy of the '605 Patent is attached as Exhibit D.

35.     Downhole is the owner of the entire right, title, and interest in and to U.S. Patent No. 9,010,411 (the "'411 Patent"), entitled "Downhole Tool and Method of Use," which was duly issued by the United States Patent and Trademark Office on April 21, 2015.  A copy of the '411 Patent is attached as Exhibit E.

**COUNT I**
**Infringement of U.S. Patent No. 8,955,605**
**(Against Silver Creek and StormField)**

36.     Downhole incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

37.     Defendant Silver Creek and StormField have infringed and are currently infringing, literally and/or under the doctrine of equivalents, the '605 Patent by, among other things, making, using, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes that infringe one or more claims of the '605 Patent.

38.     Based on information presently available to it, Downhole alleges that at least the "ZIP Plugs" infringe or are covered by at least claim 25 of the '605 Patent.  Downhole makes this preliminary identification of infringing apparatuses without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained though discovery or otherwise.

39.     Silver Creek and StormField also indirectly infringe the '605 Patent in violation of 35 U.S.C. § 271(b), (c).

40.     Silver Creek and StormField are aware of the '605 Patent at least from the date of this Complaint.

41.     Silver Creek and StormField, either alone or together, induced and are inducing infringement of the '605 Patent by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, for example, the "ZIP Plugs," which fall within the scope of at least claim 25 of the '605 Patent.  On information and belief Silver Creek and StormField provide directions, instructions, and/or other materials that encourage and facilitate infringing use by others, including to Rice Energy.  Silver Creek and StormField have sold and are selling at least the "ZIP Plugs" with the knowledge and intent that customers, such as Rice Energy, who buy the product will commit infringement by using the product, and, therefore, those customers have been and are directly infringing the '605 Patent.

42.     Silver Creek and StormField, either alone or together, have contributorily and are currently contributorily infringing the '605 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing into this judicial district and elsewhere in the United States, without license or authority, products, for example, "ZIP Plugs," or components of that product which constitute a material part of the '605 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '605 Patent, including but not limited to claim 25, and not staple articles of commerce suitable for substantial non-infringing use.

43.     The infringement by Silver Creek and/or StormField of the '605 Patent continues to be willful and deliberate, and, therefore, Downhole is entitled to damages under 35 U.S.C. § 284.

44.     As a direct and proximate result of the infringement of the '605 Patent by Silver Creek and StormField, Downhole has suffered and will continue to suffer irreparable injury for

which there is no adequate remedy at law.  Downhole also has been damaged and will continue to be damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT II
### Infringement of U.S. Patent No. 9,010,411
### (Against Defendants Silver Creek and StormField)

45.     Downhole incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

46.     Defendant Silver Creek and StormField have infringed and are currently infringing, literally and/or under the doctrine of equivalents, the '411 Patent by, among other things, making, using, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes that infringe one or more claims of the '411 Patent.

47.     Based on information presently available to it, Downhole alleges that at least the "ZIP Plugs" infringe or are covered by at least claim 1 of the '411 Patent.  Downhole makes this preliminary identification of infringing apparatuses without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained though discovery or otherwise.

48.     Silver Creek and StormField also indirectly infringe the '411 Patent in violation of 35 U.S.C. § 271(b), (c).

49.     Silver Creek and StormField are aware of the '411 Patent at least from the date of this Complaint.

50.     Silver Creek and StormField, either alone or together, induced and are inducing infringement of the '411 Patent by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district

and elsewhere in the United States, without license or authority, for example, the "ZIP Plugs," which fall within the scope of at least claim 1 of the '411 Patent.  On information and belief Silver Creek and StormField provide directions, instructions, and/or other materials that encourage and facilitate infringing use by others, including to Rice Energy.  Silver Creek and StormField have sold and are selling at least the "ZIP Plugs" with the knowledge and intent that customers, such as Rice Energy, who buy the product will commit infringement by using the product, and, therefore, those customers have been and are directly infringing the '411 Patent.

51.     Silver Creek and StormField, either alone or together, have contributorily and are currently contributorily infringing the '411 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing into this judicial district and elsewhere in the United States, without license or authority, products, for example, "ZIP Plugs," or components of that product which constitute a material part of the '411 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '411 Patent, including but not limited to claim 1, and not staple articles of commerce suitable for substantial non-infringing use.

52.     The infringement by Silver Creek and/or StormField of the '411 Patent continues to be willful and deliberate, and, therefore, Downhole is entitled to damages under 35 U.S.C. § 284.

53.     As a direct and proximate result of the infringement of the '411 Patent by Silver Creek and StormField, Downhole has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law.  Downhole also has been damaged and will continue to be damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

14

## COUNT III
### Breach of Contract
### (Against Kuehl)

54.     Downhole incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

55.     The Kuehl NDA is a valid contract between Downhole and Kuehl.

56.     Kuehl has obligations under the Kuehl NDA.

57.     However, Kuehl has breached the Kuehl NDA in at least the following ways:

a.     Upon information and belief, Kuehl disclosed confidential information of Downhole to others, including to Coffee, Didier, Williams, Silver Creek, and StormField, all in violation of the Kuehl NDA.

b.     Upon information and belief, Kuehl has improperly used confidential information belonging to Downhole to facilitate creation of the ZIP Plug for Silver Creek.

58.     The foregoing breaches have caused injury to Downhole, for which Downhole seeks actual and consequential damages, plus pre-judgment and post-judgment interest thereon as permitted by law.

59.     Pursuant to Section 4F of the Kuehl NDA, Kuehl agreed that any breach has irreparably harmed Downhole and that no remedy at law exists.  Thus, Downhole is entitled to an injunction against Kuehl for his actions in violation of the Kuehl NDA.

## COUNT IV
### Breach of Fiduciary Duty
### (Against Kuehl)

60.     Downhole incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

61.     As a former employee for Downhole, a fiduciary relationship between Kuehl and Downhole exists, and Kuehl also owes common law duties of loyalty to Downhole to act solely for the benefit of Downhole in all matters concerning the work performed for and on behalf of Downhole.

62.     Kuehl has breached his fiduciary duties to Downhole by engaging in conduct competitive to the interests of Downhole and using and/or disclosing the trade secrets and confidential information of Downhole.

63.     The foregoing misconduct of Kuehl has caused injury to Downhole, for which Downhole seeks all actual and consequential damages to which it is entitled, plus prejudgment and post-judgment interest thereon as permitted by law.  Downhole further seeks injunctive relief against Kuehl for his actions.

**COUNT V**
**Breach of Contract**
**(Against Coffee and Williams)**

64.     Downhole incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

65.     The FTSI Agreement is a valid contract between Downhole and FTSI.

66.     As former employees of FTSI, Coffee and Williams have obligations under the FTSI Agreement.

67.     However, Coffee and Williams have breached the FTSI Agreement in at least the following way: Upon information and belief, Coffee and Williams obtained confidential information belonging to Downhole as a result of Coffee's employment with FTSI and as a result of Williams working at the FTSI/Rice Site.  Coffee and Williams improperly used that confidential information to facilitate creation of the ZIP Plug for Silver Creek.

68.     The foregoing breaches have caused injury to Downhole, for which Downhole seeks actual and consequential damages, plus pre-judgment and post-judgment interest thereon as permitted by law.  Downhole further seeks injunctive relief against Coffee and Williams for their actions.

**COUNT VI**
**Tortious Interference with Contracts – the Kuehl NDA and the FTSI Agreement**
**(Against All Defendants)**

69.     Downhole incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

70.     The Kuehl NDA is a valid contract between Downhole and Kuehl.

71.     Upon information and belief, Silver Creek, StormField, Coffee, Didier, and/or Williams have willfully and intentionally interfered with the Kuehl NDA by inducing Kuehl to violate his obligations under the Kuehl NDA, including his obligations to keep confidential information belonging to Downhole regarding the frac plug technology.

72.     The FTSI Agreement is a valid contract between Downhole and FTSI, including former FTSI employees Coffee and Williams.

73.     Upon information and belief, Silver Creek, StormField, Coffee, Didier, Kuehl, and/or Williams have willfully and intentionally interfered with the FTSI Agreement by inducing former FTSI employees Coffee and/or Williams to violate obligations under the FTSI Agreement, including obligations to keep confidential information belonging to Downhole regarding the frac plug technology.

74.     Downhole has committed a significant amount of time and financial investment to developing its frac plug technology.  That Downhole frac plug technology has been obtained by Defendants improperly, including by inducing some of Defendants to violate obligations under the Kuehl NDA and/or FTSI Agreement.  For example, the ZIP Plugs being marketed and sold

by Silver Creek and StormField are a result of the foregoing misconduct by some or all of Defendants, and has resulted in actual damage to Downhole.

75.     The foregoing misconduct by Defendants have caused injury to Downhole, and for which Downhole seeks all actual and consequential damages to which it is entitled, plus pre-judgment and post-judgment interest thereon as permitted by law.   Downhole further seeks injunctive relief against Defendants for their actions.

**COUNT VII**
**Violation of Texas Uniform Trade Secrets Act**
**(Against All Defendants)**

76.     Downhole incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

77.     Downhole seeks recovery against Defendants for the actual or threatened misappropriation of Downhole's trade secrets, pursuant to the Texas Uniform Trade Secrets Act, as set forth in Chapter 134A of the Texas Civil Practice & Remedies Code.

78.     Downhole holds the entire right, title, and interest in the trade secrets conceived of, generated, or produced in connection with its frac plug technology.  Such trade secrets include, but are not limited to, the products developed, the associated hardware design, related firmware and software, components that were identified and used in connection with its frac plug technology, the general know-how and negative know-how learned in conjunction with the trial and error process in developing, testing, marketing, and selling its frac plug and associated technology, and also in conjunction with significant expenditure by Downhole in pursuit of developing its frac plug technology.

79.     The Downhole frac plug technology derives independent economic value from not being generally known to the public or to Downhole's competitors in that competitors do not

know how to replicated Downhole's unique product and methods of making the same. Additionally, the technology is of great value to Downhole because Downhole expended significant time and resources in researching and developing its revolutionary technology, giving Downhole a competitive edge in the marketplace.  Any entity who improperly acquired information about how to produce, develop, and/or use Downhole's product and technology would gain an unfair competitive advantage in that they would not be required to expend the significant time and resources necessary to develop that trade secret information.

80.    The technology developed by Downhole is not readily ascertainable by proper means by others in the industry, but rather is the product of Downhole's independent research and development.

81.    Downhole made reasonable efforts to maintain the secrecy of the above-described trade secrets by, for example, entering into the Kuehl NDA with Kuehl and the FTSI Agreement with FTSI.  Pursuant to those agreements, Coffee, Kuehl, and Williams were not granted any rights in the trade secrets owned by Downhole, and were restricted from misappropriating the Downhole frac plug technology.  By way of non-limiting example, by signing the Kuehl NDA, Kuehl agreed that "I further agree not to make copies of such Proprietary Information except as authorized by the Company. I understand that 'Proprietary Information' means any Company proprietary information."  (Kuehl NDA, § 2.A).

82.    On information and belief, Defendants have misappropriated Downhole's trade secrets because Defendants have disclosed and/or used the trade secrets conceived of, generated, or produced in connection with the Downhole frac plug technology for the development of the ZIP Plug as identified in the foregoing paragraphs contained herein.

83.     The foregoing misconduct of Defendants has caused injury to Downhole, for which Downhole seeks actual and consequential damages to which it is entitled, plus pre-judgment and post-judgment interest thereon, as permitted by law.

84.     In addition, Downhole seeks exemplary damages and also recovery of its reasonable attorneys' fees and costs pursuant to Sections 134A.004 and 134A.005 of the Texas Civil Practice and Remedies code because, upon information and belief, the Defendants' misappropriation of Downhole's trade secrets willful and malicious.

**COUNT VIII**
**Unjust Enrichment**
**(Against All Defendants)**

85.     Downhole incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

86.     Defendants have been unjustly enriched by, among other things, misappropriation of trade secrets and/or confidential information properly belonging to Downhole.  Such trade secrets and/or confidential information has been of significant value and benefit to Defendants and the circumstances are such that it would be unjust for Defendants to retain the benefit conferred upon them by continuing to use and profit from Downhole's trade secrets and/or confidential information.

**JURY DEMAND**

Downhole requests a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Downhole requests that the Court enter the following in its favor and against Defendants as follows:

A.      A judgment in favor of Downhole on all of its claims against Defendants;

20

B.      A judgment that Silver Creek and StormField have violated 35 U.S.C. § 271 by infringing, directly or indirectly, and literally or under the doctrine of equivalents, one or more claims of the '604 and '411 Patents;

C.      A judgment awarding Downhole damages adequate to compensate for Silver Creek's and StormField's infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, in an amount to be determined at trial;

D.      A judgment that Silver Creek's and StormField's patent infringement has been and continues to be willful, and a trebling of damages;

E.      A judgment declaring that this is an exceptional case and awarding Downhole its actual costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285;

F.      A judgment that Silver Creek and StormField and their respective officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them are enjoined from further infringement of the '604 and '411 Patents;

G.      A judgment that Kuehl breached the Kuehl NDA and an award of compensatory damages equal to Downhole's actual losses;

H.      An injunction against Kuehl against further breaches of the Kuehl NDA;

I.      A judgment that Coffee and/or Williams breached the FTSI Agreement and an award of compensatory damages equal to Downhole's actual losses;

J.      A judgment that some or all of the Defendants tortiously interfered with the Kuehl NDA and/or the FTSI Agreement and an award of damages;

K.      A judgment that Defendants willfully and maliciously misappropriated Downhole's trade secrets and an award of damages suffered and an award of exemplary damages;

L.      A judgment that Defendants and their respective officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them are enjoined from further misappropriation of Downhole's trade secrets;

M.      A judgment that Defendants were unjustly enriched at Downhole's expense and an award to Downhole in the amount of Defendants' enrichment;

N.      A judgment awarding Downhole pre-judgment and post-judgment interest;

O.      A judgment awarding Downhole its reasonable attorneys' fees, costs, and expenses incurred in the present action; and

P.      A judgment awarding such further equitable or other relief as the Court deems just and proper.

Dated: January 5, 2017

Of counsel:

Ann G. Fort
  Georgia Bar No. 269995
  (*admission papers forthcoming*)
Robert R.L. Kohse
  Georgia Bar No. 863748
  (*admission papers forthcoming*)
Walter Freitag
  Georgia Bar No. 510393
  (*admission papers forthcoming*)
999 Peachtree St. NE, Suite 2300
Atlanta, GA 30309
Phone: 404-853-8000
Email:  ann.fort@sutherland.com
       rob.kohse@sutherland.com
       walter.freitag@sutherland.com

Respectfully submitted,

By: _____

David A. Baay (TX 24027050)
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, TX  77002-6760
Phone: 713-470-6112
Fax: 713-654-1301
Email: david.baay@sutherland.com

*Attorneys for Downhole Technology LLC*