IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOWNHOLE TECHNOLOGY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SILVER CREEK SERVICES INC.; | § | |
| STORMFIELD INNOVATIVE | § | CIVIL ACTION NO. H-17-0020 |
| TECHNOLOGIES, LLC; DANIEL R. | § | |
| COFFEE; MICHAEL DIDIER; | § | |
| DILLON W. KUEHL; and CHARLES M. | § | |
| WILLIAMS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendants Silver Creek Services Inc., Michael Didier, and Charles M. Williams's (collectively, the "Silver Creek Defendants") Motion to Dismiss Plaintiff's Complaint and, Alternatively, Motion for More Definite Statement ("Silver Creek Defendants' Motion to Dismiss") (Docket Entry No. 23) and Defendants StormField Innovative Technologies, LLC and Dillon W. Kuehl's (collectively, the "StormField Defendants") Motion to Dismiss and Alternative Motion for More Definite Statement in Response to Plaintiff's Amended Complaint ("StormField Defendants' Motion to Dismiss") (Docket Entry No. 24).[1] For the reasons stated below, the Silver Creek Defendants' Motion to Dismiss will be

---

[1]Defendant Daniel R. Coffee's 12(b)(2) and 12(b)(6) Motion to Dismiss Amended Complaint and Supporting Memorandum of Law (Docket Entry No. 26) is not yet ripe and will be addressed in a future order.

granted in part and denied in part, and the StormField Defendants' Motion to Dismiss will be denied.

## I. Factual Background[2]

Defendant Downhole Technology LLC ("Downhole") manufactures and deploys frac plugs used in the hydraulic fracturing ("fracking") industry. Dillon W. Kuehl was employed as a Field Service Technician by Downhole from March of 2013 to March of 2014. Kuehl signed a Proprietary Information and Intellectual Property Assignment Agreement (the "Kuehl NDA") in which he agreed "to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization . . . any Proprietary Information of the Company" as defined in the NDA.[3]

From October through December of 2013 Kuehl oversaw installations of Downhole frac plugs for two customers, FTS International Services, LLC ("FTSI") and Rice Energy, at a site in the Marcellus Shale region (the "FTSI/Rice Site"). FTSI and Downhole signed a Master Purchase Agreement for Products and/or Services ("FTSI Agreement"),[4] which included a Confidentiality provision.[5]

---

[2]Factual allegations are taken from plaintiff's Amended Complaint, Docket Entry No. 20.

[3]Exhibit A to Amended Complaint, Docket Entry No. 20-1, p. 2.

[4]Exhibit B to Amended Complaint, Docket Entry No. 20-2.

[5]Id. at 4 ¶ 12.

Michael Didier was a consultant for Rice Energy at the time of the installations. Kuehl and Didier were personal friends before Kuehl began overseeing the installation at the FTSI/Rice Site. Charles M. Williams was an Operations Manager for FTSI at the time of the installations. Williams and Didier learned detailed information about the Downhole frac plugs from Kuehl at the FTSI/Rice Site. Daniel R. Coffee, Vice President of Wireline Operations for FTSI, learned detailed information about the Downhole frac plugs from his involvement at the FTSI/Rice Site and through Didier, Kuehl, or Williams.

In December of 2013 Coffee, Didier, Kuehl, and Williams formed Silver Creek Services, Inc. ("Silver Creek"). At the time, Kuehl was still employed by Downhole. In September of 2014 Kuehl and Williams, along with other individuals, formed StormField Innovative Technologies, LLC ("StormField"). Kuehl and Williams were named as Managing Members of StormField. In October of 2014 Downhole became aware that Silver Creek, in partnership with StormField, was selling frac plugs similar to the Downhole frac plug, which Silver Creek marketed as "ZIP Plugs."

Downhole alleges that Silver Creek and StormField have infringed U.S. Patent Nos. 8,955,605 ("the '605 Patent") and 9,010,411 ("the '411 Patent"). Downhole alleges that defendants knew of Downhole's patents and that Silver Creek and StormField induced and contributed to the infringement of those patents by others. Downhole alleges that Kuehl had knowledge of Downhole's

patent rights as a result of his employment with Downhole and the notice of "patent information" and the directions to a website printed on the side of each frac plug package. Coffee and Williams allegedly obtained confidential information belonging to Downhole as a result of Coffee's employment with FTSI and as a result of Williams working at the FTSI/Rice Site. Defendants allegedly used the confidential information they obtained to facilitate creation of their "ZIP Plug."

Downhole sued Silver Creek and StormField for patent infringement, Kuehl for breach of contract and breach of fiduciary duty, Coffee and Williams for breach of contract, and all defendants for tortious interference, violations of the Texas Uniform Trade Secrets Act ("TUTSA"),[6] and unjust enrichment. Defendants now move to dismiss Downhole's claims for failure to state a claim or, in the alternative, for a more definite statement of Downhole's claims under the TUTSA.

## II. Applicable Law

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as

---

[6]Tex. Civ. Prac. & Rem. Code §§ 134A.001-.008.

true and view them in the light most favorable to the plaintiff. Id. (citing Oppenheimer v. Prudential Securities Inc., 94 F.3d 189, 194 (5th Cir. 1996)). To defeat a motion to dismiss a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The court does not "strain to find inferences favorable to the plaintiff[]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." Southland Securities Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004) (internal quotation marks and citations omitted). "[C]ourts are required to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories, even though they may be otherwise well-pleaded." Flynn v. State Farm Fire and Casualty Insurance Co. (Texas), 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009) (citing Neitzke v. Williams, 109 S. Ct. 1827, 1832 (1989)).

### III. Analysis

#### A. Infringement Claims

As a preliminary matter, Downhole submitted, and the court has accepted, a Notice of Errata correcting paragraphs 41 and 58 of the Amended Complaint.[7] Arguments for dismissal on the basis of those errors are therefore moot.

Defendants argue that Downhole's claims for induced and contributory infringement fail because Downhole did not plead that

---

[7] Plaintiff's Notice of Errata, Docket Entry No. 27.

defendants had actual knowledge of the patents. But Downhole's pleadings allege that Kuehl had actual knowledge of the patents, "at least" as a result of the "notice" on the device packaging.[8] Downhole further alleges that Kuehl participated in the formation and management of both Silver Creek and StormField.[9] It is therefore plausible that Silver Creek and StormField had actual knowledge of Downhole's patents. Downhole's claims for induced and contributory infringement are therefore facially plausible.

B.  **Breach of Contract Claims**

   1.  <u>Williams</u>

Williams argues that Downhole's breach of contract claim against him should be dismissed because he was not a party to the contract between Downhole and FTSI. In Texas the elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by plaintiff; (3) breach of contract by defendant; and (4) damages. See <u>Smith International, Inc. v. Egle Group, LLC</u>, 490 F.3d 380, 387 (5th Cir. 2007). An employee of a company that enters into a contract generally has no individual liability. See, e.g., <u>Willis v. Donnelly</u>, 199 S.W.3d 262, 271 (Tex. 2006) (the corporate shield protects a business owner from individual liability on a contract entered into by the

---

[8]"Furthermore, as a result of his employment with Downhole, Kuehl had knowledge of Downhole's patent rights . . . ." Amended Complaint, Docket Entry No. 20, p. 15 ¶ 47.

[9]<u>Id.</u> at 8 ¶ 25.

entity); OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P., 234 S.W.3d 726, 738 (Tex. App.--Dallas 2007, pet. denied) ("Privity [to sue for breach of contract] is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff.").

Downhole responds that "this stage of the proceeding does not address whether Williams was or was not 'a party to the contract.'"[10] But Downhole must at least allege that Williams was a party to a valid contract. Downhole alleges that "[t]he FTSI Agreement is a valid contract between Downhole and FTSI" and that "[a]s former employees of FTSI, Coffee and Williams have obligations under the FTSI Agreement."[11] But Williams' employment status alone is not sufficient to establish privity between Williams and Downhole. Absent an allegation that Williams was a party to a valid contract with Downhole and that Williams breached that contract, Downhole's claim against Williams fails. The breach of contract claim against Williams will therefore be dismissed.

2. Kuehl

Kuehl argues that Downhole's breach of contract claim against him "fails to plead that any information that was provided to Kuehl

---

[10]Plaintiff's Response in Opposition to Certain Defendants' Motions to Dismiss ("Plaintiff's Response"), Docket Entry No. 28, p. 16.

[11]Amended Complaint, Docket Entry No. 20, p. 23 ¶¶ 82-83.

or received by Kuehl qualified as restricted confidential information under the terms of his agreement with Downhole."[12] Downhole cites two paragraphs from its Amended Complaint in its Response:[13]

> 30. None of the Defendants could have designed, developed, marketed, or sold the ZIP plug without improperly misappropriating and utilizing confidential and trade secret information belonging to Downhole . . . .
>
> 74. However, Kuehl has breached the Kuehl NDA in at least the following ways:
>
> a. On information and belief, Kuehl disclosed confidential information of Downhole to others, including to Coffee, Didier, Williams, Silver Creek, and StormField, all in violation of the Kuehl NDA.
>
> b. On information and belief, Kuehl has improperly used confidential information belonging to Downhole to facilitate creation of the ZIP Plug for StormField.[14]

In order for Kuehl to improperly use confidential information, he must first have obtained that information. The court need not strain to infer from Downhole's allegations that Kuehl obtained the confidential information while employed by Downhole and that he later used the information to Downhole's detriment. Accepting the facts pled as true, Downhole has stated a legally cognizable claim for breach of the Kuehl NDA.

---

[12]StormField Defendants' Motion to Dismiss, Docket Entry No. 24, p. 16.

[13]Plaintiff's Response, Docket Entry No. 28, p. 16.

[14]Amended Complaint, Docket Entry No. 20, pp. 10, 21-22.

C.  Tort Claims

Defendants argue that Downhole's claims for breach of fiduciary duty, tortious interference, and unjust enrichment are preempted by the TUTSA. Section 134A.007 of the Texas Civil Practice and Remedies Code states: "Except as provided by Subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." In a recent decision from this district, Judge Rosenthal provides a clear analysis of preemption under the TUTSA. AMID, Inc. v. Medic Alert Foundation United States, Inc., Civil Action No. H-16-1137, 2017 WL 1021685, at *27 (S.D. Tex. March 16, 2017). By pleading common-law causes of action in addition to misappropriation of trade secrets, the plaintiff in AMID, Inc. "essentially pleaded alternative theories of relief. It sought relief on the theory that [the defendant] misappropriated information protected as trade secrets, and alternatively under the theory that the misappropriated information was not a trade secret but was confidential." Id. at *28. Because the court concluded that the plaintiff "could recover on its tort claim without proving that the information [was] protected as trade secrets," the motion to dismiss on the basis of TUTSA preemption was denied. Id.

Like the plaintiff in AMID, Inc., Downhole's claims include misappropriation of confidential information and other allegations in addition to the misappropriation of trade secrets. Downhole's

breach of fiduciary duty claim against Kuehl stems in part from the fact that Kuehl was allegedly "engaging in conduct competitive to the interests of Downhole" as well as disclosing "confidential information."[15] Downhole's tortious interference claim against defendants also alleges the misuse of "confidential information," which may or may not include trade secrets.[16] And Downhole's unjust enrichment claim against defendants similarly involves the "taking of information properly belonging to Downhole."[17] Because Downhole's claims involve activity other than misappropriation of trade secrets and permit recovery in the event that the information obtained and used by defendants does not qualify as "trade secrets," the claims are not preempted by the TUTSA.

D.  **TUTSA Claims**

Defendants argue that Downhole's TUTSA claims mirror its breach of contract claims and that "Downhole has not alleged facts establishing a legal duty independent of the confidentiality clause of the agreement between Downhole and FTSI."[18] Defendants cite a Texas Supreme Court case for the proposition that a party may not recover under a tort theory when "the only loss or damage is to the

---

[15]Amended Complaint, Docket Entry No. 20, p. 22 ¶ 79.

[16]Id. at 24 ¶¶ 88, 90.

[17]Id. at 27 ¶ 103.

[18]Silver Creek Defendants' Motion to Dismiss, Docket Entry No. 23, p. 8 ¶ 18.

subject matter of the contract."[19]  But the NDA is not the only alleged basis for TUTSA liability.  Downhole has alleged that Kuehl owed a distinct fiduciary duty to Downhole as an employee.[20]  Moreover, even if the general rule in <u>DeLanney</u> applied to Kuehl, the rule would not preclude TUTSA claims against the remaining defendants whose misappropriation was not due to a breach of contract on their part.

Defendants also argue that "Downhole pleads its TUTSA claim in a formulaic recitation of elements, without alleging facts supporting misappropriation"[21] and that Downhole "has not identified which specific trade secrets were misappropriated, or by whom."[22]  Defendants cite no case law in support of the position that Downhole is required to identify specific trade secrets in its pleadings.  Downhole pleads that it has trade secrets relating to the manufacture and use of its frac plugs and that defendants used those trade secrets to develop their competing product.  Downhole specifically pleads that

> [s]uch trade secrets include, but are not limited to, the products developed, the associated hardware design, related firmware and software, components that were

---

[19]<u>Id.</u> (citing <u>Southwestern Bell Telephone Co. v. DeLanney</u>, 809 S.W.2d 493, 494 (Tex. 1991)).

[20]Amended Complaint, Docket Entry No. 20, p. 22 ¶ 78.

[21]Silver Creek Defendants' Motion to Dismiss, Docket Entry No. 23, p. 8 ¶ 19.

[22]StormField Defendants' Motion to Dismiss, Docket Entry No. 24, p. 15.

identified and used in connection with its frac plug technology, the general know-how and negative know-how learned in conjunction with the trial and error process in developing, testing, marketing, and selling its frac plug and associated technology, and also in conjunction with significant expenditure by Downhole in pursuit of developing its frac plug technology.[23]

Downhole's pleadings contain sufficiently defined categories to enable defendants to respond to these allegations. No more definite statement is required. And taken as true, Downhole's pleadings set forth sufficient factual allegations to support its claims under the TUTSA.

## IV. Conclusions and Orders

For the reasons explained above, the court concludes that Downhole has failed to plead a legally cognizable claim for breach of contract against Williams. That claim is therefore **DISMISSED with prejudice** as to Williams. The remainder of Downhole's claims are legally cognizable and facially plausible. The Silver Creek Defendants' Motion to Dismiss (Docket Entry No. 23) is therefore **GRANTED in part** and **DENIED in part**, and the StormField Defendants' Motion to Dismiss (Docket Entry No. 24) is **DENIED**.

**SIGNED** at Houston, Texas, on this 27th day of April, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[23]Amended Complaint, Docket Entry No. 20, p. 25 ¶ 95.