IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DOWNHOLE TECHNOLOGY LLC, § § Plaintiff, § § v. § § SILVER CREEK SERVICES INC.; § STORMFIELD INNOVATIVE § TECHNOLOGIES, LLC; DANIEL R. § COFFEE; MICHAEL DIDIER; § DILLON W. KUEHL; and CHARLES M. § WILLIAMS, § § Defendants. § | CIVIL ACTION NO. H-17-0020 |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Daniel R. Coffee's 12(b)(2) and 12(b)(6) Motion to Dismiss Amended Complaint and Supporting Memorandum of Law ("Coffee's Motion to Dismiss") (Docket Entry No. 26). For the reasons stated below, the court concludes that it lacks personal jurisdiction over Coffee. The court therefore does not reach Coffee's 12(b)(6) arguments.

### I. Factual Background

A thorough account of the facts of this case can be found in an earlier opinion.[1] In short, plaintiff Downhole Technology LLC ("Downhole") manufactures and deploys frac plugs, some of which were sold to customers FTS International Services, LLC ("FTSI") and Rice Energy for use at a site in the Marcellus Shale region of

---

[1]Memorandum Opinion and Order, Docket Entry No. 36, pp. 2-4.

Pennsylvania (the "FTSI/Rice Site"). The defendants were involved in various aspects of the installation. Downhole alleges that the defendants used confidential information and trade secrets gained from their work on the FTSI/Rice Site to create and market a competing frac plug ("the ZIP Plug") that infringes on patents held by Downhole.

Defendant Daniel R. Coffee is a resident of Ohio and former employee of FTSI. Downhole alleges that Coffee "learned detailed information about the Downhole frac plugs from his involvement at the FTSI/Rice Site, and/or through [Michael] Didier, [Dillon W.] Kuehl, and/or [Charles M.] Williams."[2] In December of 2013 Coffee, along with defendants Didier, Kuehl, and Williams, allegedly formed Silver Creek Services Inc., which markets ZIP Plugs.[3] Coffee is currently the Chief Operating Officer and President of Silver Creek.[4] Downhole alleges that Coffee "obtained confidential information belonging to Downhole as a result of Coffee's employment with FTSI," which he then used "to facilitate creation of the ZIP Plug for Silver Creek."[5] Coffee "and/or" the other Defendants also allegedly induced Kuehl, a

---

[2]Plaintiff's Amended Complaint, Docket Entry No. 20, p. 8 ¶ 24.

[3]Coffee disputes this, but whether he was involved in Silver Creek from its inception has no effect on the court's conclusions.

[4]Id. at 11 ¶ 34.

[5]Id. at 23 ¶ 84.

former Downhole employee, to violate a Proprietary Information and Intellectual Property Assignment Agreement (the "Kuehl NDA").[6]

## II. Applicable Law

### A. Standard of Review

Dismissal for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). When a foreign defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper.'" Id. (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344 (quoting Thompson v. Chrysler Motors

---

[6]Id. at 24 ¶ 88.

Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). The court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve in favor of the plaintiff any factual conflicts. Guidry v. United States Tobacco Co., 188 F.3d 619, 625 (5th Cir. 1999). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined . . . by th[e C]ourt." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993).

"A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law." Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997), cert. denied, 118 S. Ct. 691 (1998). Moreover, a federal court may only exercise personal jurisdiction over a nonresident defendant if the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Id. Thus, the court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010). Since

the Texas long-arm statute extends as far as constitutional due process allows, the court considers only the second step of the inquiry. Id.

B. **Applicable Law**

Due process is satisfied if the "nonresident defendant has certain minimum contacts with [the forum] such that the maintenance of suit does not offend 'traditional notions of fair play and substantial justice.'" Gardemal v. Westin Hotel Co., 186 F.3d 588, 595 (5th Cir. 1999) (quoting International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S. Ct. 154, 158 (1945)) (quoting Milliken v. Meyer, 61 S. Ct. 339, 343 (1940)). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that [he] 'reasonably anticipates being haled into court.'" McFadin, 587 F.3d at 759. If a plaintiff satisfies the due process requirement, a presumption arises that jurisdiction is reasonable, and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2185 (1985).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358

(5th Cir. 2001). This case involves specific jurisdiction.[7] A court may exercise specific jurisdiction when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. Gundle Lining Construction Corp. v. Adams County Asphalt. Inc., 85 F.3d 201, 205 (5th Cir. 1996) (citing Helicopteros Nacionales de Colombia, S. A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984); and Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 344 (5th Cir. 2002)). To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." Gundle Lining, 85 F.3d at 205. Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 105 S. Ct. at 2183. "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 419 (5th Cir. 1993) (citing World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559 (1980)).

---

[7]Downhole does not argue for, and nothing in the record supports, the court's general jurisdiction over Coffee. See Plaintiff's Response in Opposition to Defendant Daniel R. Coffee's 12(b)(2) and 12(b)(6) Motion to Dismiss Amended Complaint ("Response"), Docket Entry No. 35, p. 5 ("This Court has specific personal jurisdiction over Defendant Daniel R. Coffee.").

## III. Analysis

Downhole alleges that personal jurisdiction exists over Coffee "because he is the Chief Operating Officer and President of Silver Creek, a Texas corporation."[8] But Coffee's employment by a Texas corporation does not, alone, establish the requisite minimum contacts with the forum State. See Gustafson v. Provider HealthNet Services, Inc., 118 S.W.3d 479, 483 (Tex. App.-Dallas 2003) ("[T]he mere fact that [Defendant] was employed by a company with its principal place of business in Texas is not sufficient to establish the requisite minimum contacts with Texas.") (citing Burger King, 105 S. Ct. 2174). For the remaining allegations against Coffee in Downhole's Amended Complaint, Downhole does not identify a connection between the alleged activities and the forum State.

Downhole relies on Coffee's affidavit to supplement its initial jurisdictional argument.[9] Coffee states that "[o]n occasion, [he] traveled to Texas to visit FTSI's office in Fort Worth, Texas and attend a conference but the majority of [his] work with FTSI was done in Pennsylvania."[10] He further states that "[t]he majority of [his] communications with any of the other

---

[8]Plaintiff's Amended Complaint, Docket Entry No. 20, p. 11 ¶ 34.

[9]Plaintiff's Response, Docket Entry No. 35, p. 8. ("By his Motion, Mr. Coffee revealed facts that were unavailable to Plaintiff during the pleading stage, and exemplify why this Court has personal jurisdiction over him.")

[10]Affidavit of Daniel R. Coffee, Exhibit A to Coffee's Motion to Dismiss, Docket Entry No. 26-1, p. 7.

Defendants in this lawsuit were made while [he] was in Pennsylvania or Ohio."[11] From these statements Downhole reaches the unsupported conclusion that some of Coffee's discussions while in Texas must have involved the alleged misappropriation,[12] arguing that "when a defendant travels to the forum state to learn the trade secrets of Plaintiff and to discuss plans involving those trade secrets, a prima facie case of personal jurisdiction exists."[13] Without factual support, Downhole's conclusory allegation does not constitute a prima facie case for personal jurisdiction.

Downhole also argues that it has made a prima facie case for personal jurisdiction over Coffee because his communications "were directed toward Texas and involved the facts giving rise to Downhole's TUTSA claim."[14] Downhole argues that if Coffee communicated with other Defendants located in Texas "to further the misappropriation of Plaintiff's trade secrets, he knew or should have known that that activity would cause harm to Downhole in Texas."[15] But the court must look "to the defendant's contacts with

---

[11] Id.

[12] Plaintiff's Response, Docket Entry No. 35, p. 8. (citing Coffee Affidavit, Exhibit A to Coffee's Motion to Dismiss, Docket Entry No. 26-1, p. 7).

[13] Id. (citing Stelax Industries, Ltd. v. Donahue, Civil Action No. 03-cv-923, 2004 WL 733844, at *4 (N.D. Tex. Mar. 25, 2004)).

[14] Id. at 9.

[15] Id. at 10.

the forum State itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) (citing International Shoe, 66 S. Ct. 154, 160 (1945)). Coffee's alleged contacts with the forum State are too tenuous to support specific jurisdiction. Coffee resides in Ohio[16] and works in Pennsylvania.[17] The FTSI/Rice Site where he allegedly obtained Downhole's confidential information was in Pennsylvania.[18] Coffee states that Silver Creek neither maintains nor solicits customers in Texas.[19] Downhole alleges no contradictory facts. The only basis Downhole offers for exercising personal jurisdiction over Coffee is, in effect, that his alleged actions harmed a Texas company. That is insufficient to support specific jurisdiction.

Downhole requests that, should the court finds it lacks personal jurisdiction over Coffee, the court either transfer the case or permit Downhole to amend its complaint. The court has discretion to transfer a civil action to another district in which it may have been brought or to which all parties have consented "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Downhole asks the court to exercise its discretionary powers under § 1404(a) to sever the

---

[16]Coffee Affidavit, Exhibit A to Coffee's Motion to Dismiss, Docket Entry No. 26-1, pp. 5 ¶ 3.

[17]Id. at 8 ¶ 19.

[18]Id. at 7 ¶ 17.

[19]Id. at 8 ¶ 20.

claims against Coffee and transfer them without argument for why doing so would be for the convenience of parties and witnesses, several of whom likely would be co-defendants in the present action, or in the interest of justice. Because dismissal will be without prejudice, leaving Downhole free to bring its claims against Coffee in another forum, the court concludes that dismissal is appropriate here. And because Downhole has identified no facts that would support the court's personal jurisdiction over Coffee, amendment would be futile.

### IV. Conclusion and Order

For the reasons explained above, the court concludes that Downhole has failed to present a prima facie case for the court's personal jurisdiction over defendant Daniel R. Coffee. Because the court concludes that a transfer would not be in the interest of justice and that amendment of Downhole's complaint would be futile, Defendant Daniel R. Coffee's 12(b)(2) Motion to Dismiss Amended Complaint (Docket Entry No. 26) is **GRANTED**. The claims against Coffee are therefore **DISMISSED without prejudice for lack of jurisdiction**.

**SIGNED** at Houston, Texas, on this 8th day of May, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE